## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SELMA DIVISION

UNITED STATES OF AMERICA *ex rel.*;
STEPHANIE STRONG BLANKENSHIP,

     Plaintiffs,

  v.

LINCARE INC.,

     Defendant.

Case No. 2:19-cv-104-KD-N

JUDGE DUBOSE
MAGISTRATE JUDGE NELSON

## LINCARE INC.'S RESPONSE TO AMENDED COMPLAINT

Defendant Lincare Inc. ("Lincare") hereby answers the Amended Complaint of Plaintiff Stephanie Blankenship ("Plaintiff"), by corresponding numbered paragraphs, as follows.

## INTRODUCTION

1. Relator brings this action on behalf of herself and the United States of America to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33.

**RESPONSE**: The allegations in this paragraph contain legal conclusions to which no response is required. Answering further, to the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice. To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

2. These claims are based upon Defendant Lincare's submission of false and fraudulent patient claims for payment to the United States, and its fiscal intermediaries, with the intent of receiving payments in excess of those to which they were legally entitled.

**RESPONSE**: The allegations in this paragraph contain legal conclusions to which no response is required. Answering further, to the extent that the allegations in this paragraph are relevant to

Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice. To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

3.      Defendant submitted false and fraudulent claims to the United States for services and equipment that were non-reimbursable, were not medically necessary, were never provided, or were provided in direct violation of the applicable standards and regulations governing Defendant's provision of oxygen equipment and services. As a result of these knowingly false and fraudulent claims, Defendant received payments from the United States that were inflated, excessive, unearned, and improper.

**RESPONSE**: The allegations in this paragraph contain legal conclusions to which no response is required. Answering further, to the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice. To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

4.      As described herein, Lincare generally engaged in the following wrongful acts and practices:

a.      Billing for oxygen equipment after receiving notice that the patient was no longer using the equipment;

b.      Billing for portable oxygen tanks when the patients did not require them;

c.      Fabricating evidence to support false claims that patients had ordered refills of oxygen that they never requested;

d.      Testing potential patients and providing oxygen to Medicare beneficiaries without physician orders; and

e.      Failing to return overpayments received from government payors.

4824-5554-4545.4

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Otherwise denied.

5.      Relator also makes a claim for retaliatory discharge in violation of 31 U.S.C § 3730(h) as she was discharged from her employment with Lincare for attempting to report and to stop one or more of the false claims outlined herein.

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

6.      Relator has complied with the requirement of the False Claims Act to provide all of her material evidence to the United States prior to filing suit.

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.  Answering further, Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

7.      The False Claims Act ("Act") provides in pertinent part that:

[A]ny person who - -

> (A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment of approval; [or]
> (B)     knowingly makes, uses, or cause to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a).

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.  Answering further, to the extent that the allegations in this paragraph are relevant to

Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.

8.     The Act further provides that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
> Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contract, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. §3730(h)(1) and (2).

**RESPONSE**: The allegations in this paragraph contain legal conclusions to which no response is required.

9.     The fraud complained of herein violated the Act after the May 2009 amendment.

**RESPONSE**: The allegations in this paragraph contain legal conclusions to which no response is required. Answering further, to the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice. To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

10.     Relator seeks to recover damages, treble damages, and civil penalties arising from false claims that Lincare knowingly presented or caused to be presented to, and were paid by, the United States as a result of the acts of Lincare and its agents, employees, and co-conspirators, and for discharging Relator from her employment for trying to report and to stop one or more violations of the Act.

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.  Answering further, to the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

## PARTIES

11.     Relator Stephanie Strong Blankenship was at all times relevant to this Complaint a resident of Selma, Alabama.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

12.     Relator was employed for approximately six years at Healthcare Solutions in Selma, Alabama.  In September/October 2015, the Healthcare Solutions center in Selma, Alabama combined with the Lincare operation in Selma and continued operating as Lincare.  Relator worked at Lincare's Selma center as a respiratory therapist until she was wrongfully terminated on March 7, 2016.

**RESPONSE**:  Lincare admits the allegations in the first and second sentences of this paragraph. Lincare further admits that prior to her termination, Plaintiff worked as a respiratory therapist at Lincare's Selma center.  Lincare otherwise denies the allegations of this paragraph.

13.     Defendant Lincare, Inc. is a corporation existing under the laws of the State of Delaware, with its principal office for transacting business located at 19387 US 19 N. Clearwater, FL 33764.  Lincare, Inc. is a wholly owned subsidiary of Lincare Holdings, Inc.

**RESPONSE**:  Admitted, except the Company's legal name is "Lincare Inc." and its parent's legal name is "Lincare Holdings Inc."

## JURISDICTION AND VENUE

14.     Lincare does business in this District and has offices in this District.  Therefore, Lincare is subject to this Court's jurisdiction.

**RESPONSE**:  Lincare admits to the allegations of the first sentence of this paragraph.  The remaining allegations in this paragraph contain legal conclusions to which no response is required.

15.     This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-33. This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. §3732 and 28 U.S.C. §§1331, 1345, and 1367(a).

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.  Answering further, to the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.

16.     Venue is proper in this District under 31 U.S.C. §3732(a) because Lincare can be found and/or transacts business in this District.  Venue is also proper pursuant to 28 U.S.C. §§1391(b)(2) and (c).

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

17.     Relator worked as a Respiratory Therapist at Healthcare Solutions from July 2010 until she was promoted to Center Manager in February 2011.  As Center Manager, Relator's duties included:  overseeing the operation of all areas of the center such as sales, customer service, clinical and delivery, including growing the patient base, purchasing equipment and supplies, and ensuring that operational procedures complied with federal, state, and local regulations.

**RESPONSE**:  Lincare admits that Plaintiff began working as a respiratory therapist at Health Care Solutions in July, 2010 and that Plaintiff later became Center Manager, but denies that occurred in February 2011.  Lincare admits the allegations in the second sentence as a general partial description as to duties a well-performing Center Manager should perform but is without information or knowledge sufficient to form a belief as to the truth of whether Plaintiff did so, and therefore denies the same.

18.     Relator remained Center Manager until the Healthcare Solutions center merged its operations with Lincare in September 2015.  At that time, she returned to her position as a Respiratory Therapist and worked in that position for Lincare until March 7, 2016.  As a

Respiratory Therapist for Lincare, Relator's duties included:  equipment setups for ventilators, monitors, CPAP units, and other respiratory services in patients' homes, providing patient education, and performing care checks on current patients.

**RESPONSE**:  Lincare states that the Health Care Solutions center in Selma, Alabama was consolidated with the Lincare center, denies it occurred in September 2015, but otherwise admits the allegations in the first sentence of this paragraph.  Lincare denies that Plaintiff's job title was "Respiratory Therapist," but otherwise admits the allegations in the second sentence of this paragraph. Lincare admits the allegations in the third sentence as a general partial description as to duties a well-performing employee should perform but denies that plaintiff did so.

19.     While performing her duties as a Respiratory Therapist for Lincare, Relator discovered from her personal observation and from her interaction with patients and doctors that Lincare was engaging in the following fraudulent conduct:

a.     Billing for oxygen equipment after receiving notice that the customer was no longer using the equipment;

b.     Billing for portable oxygen tanks when the customer did not require them;

c.     Fabricating evidence to support false claims that customers had ordered refills of oxygen that they never requested;

d.     Testing potential customers and providing oxygen to Medicare beneficiaries without physician orders; and

e.     Failing to return overpayments received from government payors.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same. Answering further, Lincare denies it engaged in any fraudulent conduct.

20.     In September 2015, Relator noticed that the signatures on Certificates of Medical Necessity ("CMN") from prescribing physicians, Dr. Bruce Taylor, Dr. Walid Freij, and Dr. Samer Fahoum, looked unusual.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

21.    Relator was very familiar with the signatures of these physicians because they frequently referred patients to Lincare.  Relator recognized that these doctors' signatures had been forged by someone in the Lincare office.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

22.    Relator called the Lincare corporate hotline anonymously and reported all of the above to Lincare in late September or early October 2015.

**RESPONSE**:  Lincare admits that an employee claiming to be named "Stephanie" made a call on or around October 13, 2015 regarding CMNs.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

23.    On November 12, 2015, Relator had a telephone conversation with Vanessa Hager, a billing supervisor and compliance investigator for Lincare, at Lincare's corporate office, to follow up on the conversation that she had had with her a month earlier concerning the documents Relator submitted relative to the fraudulent activity and reported that a patient, "JB", had complained to her about being billed for equipment that she never received.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.  Answering further, Lincare denies that Vanessa Hager was a billing supervisor and compliance investigator for Lincare on November 12, 2015.

24.    Lincare failed to conduct even a facially sufficient investigation into these allegations.  To Relator's knowledge, Lincare never contacted any of the physicians who Relator

8

identified as having had their signatures forged on CMNs to verify their [sic]authenticity or JB to verify Relator's allegation that JB was being billed for equipment she had never received.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Answering further, Lincare denies the allegations in the first sentence of this paragraph.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies the same.

25.    Relator also discussed the issues above with Lincare District Manager, Ashley Holler, on November 13, 2015.  Relator informed Ms. Holler about being scheduled to perform care checks and equipment delivery for patients that did not have a Plan of Treatment ("POT").  Relator also told Ms. Holler that Center Manager, Donja Smith, impeded her ability to perform vent checks and limited her access to Lincare's computer system.  Additionally, Relator reported that she was being singled out and constantly called into Donja Smith's office.  Relator further reported that she was afraid to ask if she could go to the hospital for a migraine for fear of getting written up by Donja Smith.  Ashley Holler said she would come to the Selma Center the following week to meet with Donja Smith and Relator.  Relator asked for a written job description and expectations to ensure that she was meeting Lincare's standards.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies the same.

26.    A Trilogy Ventilator was ordered for patient "CB" (account no. [REDACTED]) in September 2015 by Donja Smith.  The Trilogy machine that was supposed to be assigned to CB was located at the Selma Center on January 19, 2016.  Relator obtained a signed statement from CB on February 29, 2016 stating that she did not have a Trilogy machine and that she had never had a Trilogy machine.  Through her work at Lincare, Relator has knowledge that CB never received the Trilogy machine for which Medicare was billed and for which Lincare received reimbursement from September 2015 until at least January 2016.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Answering further, Lincare is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

27.     A Trilogy Ventilator was ordered for patient "LH" (account no. [REDACTED]) in December 2015 by Donja Smith.  Medicare approved a reimbursement of $1,561.00 per month for the Trilogy machine.  The Trilogy machine that was supposed to be assigned to LH was located at the Selma Center on January 19, 2016.  Relator obtained a signed statement from LH on February 29, 2016 stating that she did not have a Trilogy machine and that she had never had a Trilogy machine.  Through her work at Lincare, Relator has knowledge that CB never received the Trilogy machine for which Medicare was billed and for which Lincare received reimbursement in the amount of $1,561.00.

**RESPONSE**: To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Answering further, Lincare is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

28.     A Trilogy Ventilator was ordered for patient "DT" (account no. [REDACTED]) in March 2015 by Donja Smith.  The Trilogy machine that was supposed to be assigned to DT was located at the Selma Center on January 19, 2016.  Relator obtained a signed statement from DT on January 20, 2016 stating that he did not have a Trilogy machine and that he had never had a Trilogy machine.  Through her work at Lincare, Relator has knowledge that DT never received the Trilogy machine for which Medicare was billed and for which Lincare received reimbursement from March 2015 until at least January 2016.

**RESPONSE**: To the extent that the allegations in this paragraph are relevant to Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have been dismissed with prejudice.  Answering further, Lincare is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

29.     A Trilogy Ventilator was ordered for patient "OB" (account no. [REDACTED]) in June 2015 by Donja Smith.  The Trilogy machine that was supposed to be assigned to OB was located at the Selma Center on January 19, 2016.  Relator obtained a signed statement from OB on March 4, 2016 stating that she did not have a Trilogy machine and that she had never had a Trilogy machine.  Through her work at Lincare, Relator has knowledge that OB never received the Trilogy machine for which Medicare was billed and for which Lincare received reimbursement from June 2015 until at least January 2016.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II

of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have

been dismissed with prejudice.  Answering further, Lincare is without information or knowledge

sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies

the same.

30.     A Trilogy Ventilator was ordered for patient "EH" (account no. [REDACTED]) in
February 2015 by Donja Smith.  The Trilogy machine that was supposed to be assigned to EH was
located at the Selma Center on January 19, 2016.  Relator obtained a signed statement from EH on
January 20, 2016 stating that she did not have a Trilogy machine and that she had never had a
Trilogy machine.  Through her work at Lincare, Relator has knowledge that EH never received the
Trilogy machine for which Medicare was billed and for which Lincare received reimbursement
from February 2015 until at least January 2016.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II

of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts have

been dismissed with prejudice.  Answering further, Lincare is without information or knowledge

sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies

the same.

31.     A Trilogy Ventilator was ordered for patient "SK" (account no. [REDACTED]) in
July 2015 by Donja Smith.  The Trilogy machine that was supposed to be assigned to SK was
located at the Selma Center on January 19, 2016.  Through her work at Lincare, Relator has
knowledge that SK never received the Trilogy machine for which Medicare was billed and for
which Lincare received reimbursement from July 2015 until at least January 2016 in the amount
of approximately $10,927.00.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II

of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts

have been dismissed with prejudice.  Answering further, Lincare is without information or

knowledge sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore denies the same.

32.     At the time Lincare began billing Medicare for each of the above claims, Donja
Smith was the only person in the center qualified to setup the Trilogy machines in the patients'

homes.  Lincare, through its center manager, Donja Smith, knew that each of the above claims which were submitted for reimbursement through Medicare were false because none of these patients had received Trilogy machines.

**RESPONSE**:  To the extent that the allegations in this paragraph are relevant to Counts I and II

of Plaintiff's Amended Complaint, Lincare states that no response is required as those Counts

have been dismissed with prejudice.  Answering further, Lincare is without information or

knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of this

paragraph, and therefore denies the same.  Otherwise, denied.

**COUNT I**
**VIOLATION OF 3729(a)(1)(A)**

33.     Defendants (by and through their agents, officers, and employees) knowingly presented, or caused to the presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1)(A).

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  Answering further, the

allegations in this paragraph contain legal conclusions to which no response is required. To the

extent that this paragraph may be construed as containing factual allegations against Lincare

requiring a response, Lincare denies the allegations.

34.     From at least February 2015 to March 2016, Lincare, by and through its agents and employees did knowingly and routinely present and/or cause to be presented, false and fraudulent claims for oxygen and respiratory equipment to Medicare and other government payors for the purpose of getting such false and fraudulent claims paid or approved by the United States.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

35.     These false claims, as described above, were presented in the following circumstances:

12

- Lincare intentionally billed Medicare for respiratory equipment that was never ordered by the patients' medical providers as the medical care providers' signatures had been forged.

- Lincare intentionally billed Medicare for respiratory equipment that was never delivered to patients.

- Lincare intentionally billed Medicare for services related to respiratory equipment that patients never possessed, such as home visits for Trilogy ventilators.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

36.   At the time of submission of these claims, Lincare, through its Center Manager, Donja Smith, knew that such claims were false.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

37.   Lincare was informed on several occasions that the conduct above was occurring and that it would result in false claims to the United States.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

38.   Lincare failed to conduct even a facially sufficient investigation into these allegations.  To Relator's knowledge, Lincare never contacted any of the physicians who Relator identified as having had their signatures forged on CMNs to verify their authenticity or its patients to verify Relator's allegation that they were being billed for equipment they had never received.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

39.     As a result of the presentation of these false claims by Lincare, the United States, through Medicare and other government payor programs, has paid numerous false claims and has sustained, at a minimum, $61,035.00 dollars in damages.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

40.     Upon information and belief, the United States, through Medicare and other government payor programs, has paid numerous false claims and has suffered damages greatly in excess of $61,035.00.  This figure only represents fraudulent reimbursement of $1,561.00 per month for 6 patients over a short period of time.  Upon information and belief, this fraudulent conduct both pre-dated and post-dated this short period of time and Relator's employment at Lincare.

**RESPONSE**:  Count I of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

## COUNT II
## VIOLATION OF 3729(a)(1)(B)

41.     From February 2015 to January 2016, Lincare, by and through its agents and employees did knowingly and routinely present and/or cause to be presented, false and fraudulent claims for oxygen and respiratory equipment to Medicare and other government payors for the purpose of getting such false and fraudulent claims paid or approved by the United States.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

14

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

42.     These false claims, as described above, were presented in the following circumstances:

- Lincare intentionally billed Medicare for respiratory equipment that was never ordered by patients' medical providers by forging medical providers' signatures to Certificates of Medical Necessity, and it falsely claimed it had delivered medically indicated and medically necessary services.

- Lincare intentionally billed Medicare for respiratory equipment that was never delivered to patients and falsely claimed that it had delivered medically indicated and medically necessary services.

- Lincare intentionally billed Medicare for services related to respiratory equipment that patients never possessed, such as home visits for Trilogy ventilators.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

43.     In those cases in which Lincare improperly initiated orders for respiratory equipment and services related to such equipment that was not prescribed by medical providers, Lincare caused patients to make false statements to the United States by having these patients sign false documents related to such services and equipment.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this paragraph may be construed as containing factual allegations against Lincare requiring a response, Lincare denies the allegations.

44.     Further, Lincare made a false record or statement to the United States by forging the signatures of medical providers upon the Certificates of Medical Necessity.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

45.     Lincare knew the above claims were false and fraudulent at the time the records or statements were made or caused to be made.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

46.     At all relevant times, Lincare possessed information which would have allowed its supervisory personnel to discover the false and fraudulent nature of the above records and statements but declined to prevent their submission or use in connection with claims being presented to Medicare for approval or payment.  Lincare failed to conduct even a facially sufficient investigation into these allegations.  To Relator's knowledge, Lincare never contacted any of the physicians who Relator identified as having had their signatures forged on CMNs to verify their authenticity or its patients to verify Relator's allegations that they were being billed for equipment they had never received.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

47.     Each of these records and statements were material to Medicare's decision to approve or to pay claims.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

48.     But for the fraudulent records and statements outlined herein, Medicare would not have approved numerous claims for payment submitted by Lincare.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

49.    These false and fraudulent records and statements resulted in excessive and
unearned income for Lincare.

**RESPONSE**:  Count II of Plaintiff's Amended Complaint has been dismissed with prejudice and

therefore Lincare need not answer the allegations of this paragraph.  To the extent that this

paragraph may be construed as containing factual allegations against Lincare requiring a response,

Lincare denies the allegations.

<u>**COUNT III**</u>
<u>**VIOLATION OF THE WHISTLEBLOWER PROTECTION PROVISION OF THE
FALSE CLAIMS ACT 31 U.S.C. §3730(h)**</u>

50.    Relator was an employee of Lincare who took action to prevent Lincare's
fraudulent conduct that resulted in the presentation of false claims to Medicare and to prevent the
making of false records or statements that were material to the payment of false claims.  These
actions included:

   f.    Notifying Donja Smith and Ashley Holler on multiple occasions that
    patients were being billed for equipment that they never received.

   g.    Notifying Lincare corporate officials of false and fraudulent conduct that
    lead to false claims being submitted to Medicare for payment.

**RESPONSE**:  The allegations in this paragraph contain legal conclusions to which no response is

required.  Answering further, to the extent that the allegations in this paragraph are relevant to

Counts I and II of Plaintiff's Amended Complaint, Lincare states that no response is required as

those Counts have been dismissed with prejudice.  Otherwise denied.

51.    Relator called Lincare's anonymous hotline to report fraudulent billing and forged
CMNs in late September or early October 2015.

**RESPONSE**:  Lincare admits that an employee claiming to be named "Stephanie" made a call on or around October 13, 2015 regarding CMNs.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

52.     In October 2015, Relator called and reported the fraudulent billing and forged CMNs to Vanessa Hager at Lincare's Corporate Office.

**RESPONSE**:  Lincare admits that an employee claiming to be named "Stephanie" made a call on or around October 13, 2015 regarding CMNs.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

53.     On or about October 21, 2015, Relator was called into Donja Smith's office and received a written warning stating that Relator was "not demonstrating the dedication and commitment level expected of an employee of Lincare."

**RESPONSE**:  Lincare admits that Plaintiff met with Donja Smith on or about October 21, 2015.  Answering further, Lincare states that the written warning referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

54.     This written warning also stated that "on average you are to make 6-8 clinical visits per day and 20 Care Checks per month, including overnight oximetries.  You need to follow-up immediately with all overnight oximetries/Care Check results and turn in the reports and paperwork daily.  All Delivery Tickets ["DT"] for new set-ups, supplies or visits need to be given to the Customer Service Representative within 24 hours."

**RESPONSE**:  The written warning referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

55.     Relator asked for a list of the duties expected of a Healthcare Specialist.

4824-5554-4545.4

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

56.     Relator called Vanessa Hager again on November 12, 2015 to check on the status of her investigation of the fraudulent practices reported by Relator.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

57.     Upon information and belief, Vanessa Hager was a billing supervisor and a compliance investigator for Lincare from April 1994 until April 2016.

**RESPONSE**:  Lincare admits that Vanessa Hager was at different times during her employment a billing supervisor and a compliance investigator for Lincare, and denies that she was in either of these positions in 1994 and times thereafter.

58.     Vanessa Hager went to Lincare's Selma location between November and December 2015 to interview multiple employees, including Relator, relative to Relator's claims of fraudulent billing and forged CMNs.

**RESPONSE**:  Lincare admits that Vanessa Hager went to Lincare's Selma location in January 2016, and that during this visit Vanessa Hager spoke with Plaintiff and other employees regarding possible compliance concerns.  Otherwise denied.

59.     Hager asked Relator if she had any knowledge of any wrongdoing and asked for specific examples of such.  Relator told Vanessa Hager that she had already reported these incidents, but she went back over the details of the fraudulent conduct she had reported.

**RESPONSE**:  Lincare admits that when Vanessa Hager met with Plaintiff at Lincare's Selma location in January 2016, Plaintiff and Vanessa Hager discussed Plaintiff's belief that CMNs may have been altered.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

60.     On November 18, 2015, Relator was given a document titled "Healthcare Specialists Expectations" and was asked to sign the document along with Donja Smith and Ashley Holler.

**RESPONSE**:  Admitted.

61.    The document outlined the duties Relator was expected to perform including "5 complete care checks per week/20 per month."

**RESPONSE**:  The document referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

62.    On or about December 1, 2015, Relator was called into Donja Smith's office and was placed on probation.

**RESPONSE**:  Admitted.

63.    This probationary period would extend up to sixty (60) days from December 1, 2015.

**RESPONSE**:  Lincare states that the terms of the probationary period are set forth in the Action Plan dated December 1, 2015, which is a document that speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

64.    The reason Relator was given for being placed on probation was that her performance was not meeting acceptable standards and that she had serious performance deficiencies.

**RESPONSE**:  Lincare states that the reasons Plaintiff was placed on probation are set forth in the Action Plan dated December 1, 2015, which is a document that speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

65.    Relator was provided with an Action Plan ("Plan") "to outline the specific actions required by Stephanie Strong to bring her performance to an acceptable, competent level, meeting the full requirements of the Healthcare Specialist position."  The specific areas requiring improvement were listed as productivity, attendance, and patient complaints.  The Plan stated that on average Relator was to make 6-8 clinical visits per day and 20 Care Checks per month.

**RESPONSE**:  Lincare admits that Plaintiff was provided with an Action Plan.  The Action Plan referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph

are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.

66.     Lincare's claim that Relator's performance was deficient was not true.  Relator consistently performed the tasks assigned to her.  Relator could not perform the number of ventilator checks to meet Lincare's standards because Donja Smith preferred to do them herself. Donja Smith also limited Relator's access to Lincare's computer system such that Relator could not download the necessary information to perform care checks without going through Donja Smith.

**RESPONSE**:  Denied.

67.     In late December 2015 or early January 2016, Donja Smith was fired from Lincare.

**RESPONSE**:  Admitted.

68.     On or about February 3, 2016, Relator had a meeting with Ashley Holler in which Ms. Holler accused Relator of having a second job at Jackson Hospital.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

69.     After the meeting, Relator emailed Ashley Holler a statement verifying that she had not worked at Jackson Hospital since either July or August of 2010 and that she had not worked a second job since she had been employed with HealthCare Solutions/Lincare.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

70.     On or about March 7, 2016 (letter dated March 3, 2016), Ashley Holler called Relator while she was out of the office doing Care Checks and requested that she meet with her when she returned.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

71.     Relator met with Ashley Holler and Ms. Holler presented Relator with a Letter of Termination dated March 7, 2016 and informed her that she was terminated effective immediately.

**RESPONSE**:  Lincare admits that Plaintiff was presented with a Letter of Termination dated March 3, 2016 and that this letter states "your employment is being terminated effective

21

immediately," but states that this letter otherwise speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

72.     The Letter of Termination stated that for the month of February 2016, Relator had performed only one Care Check and that she had not been doing ventilator checks.  This was not true.

**RESPONSE**:  Lincare states that the Letter of Termination referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.  Otherwise denied.

73.     During the month of February 2016, Relator conducted 8 care checks, 32 overnight oximetry pickups, and 6 ventilator checks, including 2 visits in which patients signed statements that they never had a Trilogy ventilator.

**RESPONSE**:  Denied.

74.     Ashley Holler knew Relator's activity and the number of patients she saw.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

75.     The Healthcare Specialist Daily Log kept by Relator and submitted to Ashley Holler shows that Relator performed eight care checks and six ventilator/Trilogy checks.  Ashley Holler also knew that Relator had conducted 32 overnight oximetry pickups.

**RESPONSE**:  The Healthcare Specialist Daily Log referenced in this paragraph speaks for itself.  To the extent that the allegations of this paragraph are inconsistent with or mischaracterize the language of this document, Lincare denies the allegations.  Lincare is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

76.     In addition to Relator's daily log, Relator and Ashley Holler had conversations via text messages regarding care checks and patients seen during the month of February.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies the same.

77.     Prior to Relator's call to Lincare's corporate office to report fraudulent billing and forged CMNs at the Selma Center, Relator had never received any complaints or any disciplinary actions either as a Healthcare Specialist or while she was Center Manager.

**RESPONSE**: Denied.

78.     Donja Smith and Ashley Holler knew Relator reported the fraudulent activity to the Lincare corporate office.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies the same.

79.     After Relator reported the fraudulent activity to Ashley Holler, Ms. Holler began calling, emailing, and texting Relator during the workday to monitor her activity.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies the same.

80.     On February 5, 2016, Ashley Holler sent Relator a message asking her how many patients she had seen the day before.  Relator responded that on February 4, 2016 she saw seven patients, and she gave the reason for the visits and her mileage, and she reported that she left work at 6:34 p.m.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies the same.

81.     Lincare's claim that Relator was fired due to a lack of performance and productivity is mere pretext.  Relator was terminated because she reported fraudulent billing and forged CMNs to Lincare's corporate office.

**RESPONSE**:  Denied.

82.     Relator had difficulty finding employment after she was terminated by Lincare. She was unemployed from March 2016 until June 2016.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies the same.

83.     Relator worked in insurance sales from June 2016 until December 2016 at a reduced rate of pay.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

84.     Relator was again unemployed from December 2016 until March 2017.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

85.     In March 2017, Relator began working part-time as a Respiratory Therapist at Jackson Hospital in Montgomery, Alabama making less than she did at Lincare.

**RESPONSE**:  Lincare is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies the same.

86.     Defendant's termination of Relator from her employment as a consequence of Relator's efforts to prevent fraudulent billing is in violation of the False Claims Act, and it caused Relator to suffer significant loss of income and loss of benefits.

**RESPONSE**: Denied.

## AFFIRMATIVE DEFENSES

Lincare sets forth its affirmative defenses below.  Each defense is asserted as to all claims unless otherwise indicated.  By setting forth these defenses, Lincare does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Moreover, nothing stated herein is intended to be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiff's allegations.  Lincare reserves the right to amend or supplement this Answer with as additional affirmative defenses become known upon further discovery.

## First Affirmative Defense

Plaintiff cannot prove that her termination would not have occurred 'but for' her alleged protected conduct.

24

### Second Affirmative Defense

Plaintiff did not engage in activity protected by the FCA's retaliation provision.

### Third Affirmative Defense

Plaintiff was not terminated because of activity protected by the FCA's retaliation provision.

### Fourth Affirmative Defense

All actions taken by Lincare towards Plaintiff were taken for legitimate, non-retaliatory reasons.

### Fifth Affirmative Defense

Plaintiff cannot establish any causal connection between her alleged protected conduct and any adverse action taken by Lincare.  Lincare would have taken the adverse action alleged by Plaintiff even if Plaintiff had not engaged in protected activity as alleged by Plaintiff.

### Sixth Affirmative Defense

Plaintiff's claims for damages are barred to the extent such damages are speculative.

### Seventh Affirmative Defense

Plaintiff's claims for damages are barred or reduced to the extent Plaintiff has failed to properly and fully mitigate damages.

### Eighth Affirmative Defense

Plaintiff's claims are barred due to the statute of limitations.

### Ninth Affirmative Defense

Plaintiff is not entitled to a trial by jury on any Count of the Amended Complaint.

**WHEREFORE**, Defendant Lincare Inc. respectfully requests that the Court:

(i) enter judgment in its favor and against Plaintiff on Count III of the Amended

4824-5554-4545.4

Complaint;

    (ii) award it reasonable attorneys' fees and costs as permitted by law; and

    (iii) award it all other relief as is just and reasonable.

              Respectfully submitted,

              **LINCARE INC.**

              By its attorneys,

               /s/ *Lawrence M. Kraus*
              Lawrence M. Kraus (admitted *pro hac vice*)
              Jessica E. Joseph (admitted *pro hac vice*)
              FOLEY & LARDNER LLP
              111 Huntington Avenue, Suite 2500
              Boston, MA 02199
              Tel: (617) 342-4000
              Fax: (617) 342-40001
              lkraus@foley.com
              jjoseph@foley.com

              Daniel J. Martin (MARTD8327)
              JONES WALKER LLP
              420 20th St N, Suite 1100
              Birmingham, AL 35203
              Tel: (205) 244-5200
              Fax: (205) 244-5400
              danielmartin@joneswalker.com
              *Attorneys for Defendant Lincare Inc.*

Dated: March 22, 2021

4824-5554-4545.4